## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY,<br>1411 K Street N.W. Suite 1300<br>Washington DC 20005<br><br>        Plaintiff,<br><br>  v.<br><br>U.S. DEPARTMENT OF ENERGY,<br>1000 Independence Ave., SW<br>Washington, DC 20585<br><br>        Defendant. | **COMPLAINT FOR DECLARATORY**<br>**AND INJUNCTIVE RELIEF**<br><br><br>Civil Action No.: _____ |

## INTRODUCTION

1.     This case challenges the Department of Energy's ("DOE") failure to timely search for, and provide, records related to the Interconnections Seam Study ("Seam Study") – an evaluation of options for improving the connections within the U.S. electricity grid, which will allow renewable energy resources to be used more efficiently within the greater electricity system. Although DOE's National Renewable Energy Laboratory ("NREL") has been working on the Seam Study for years, and has reportedly sent a final version to DOE officials, the final Study was reportedly "pulled back by DOE headquarters" in late October, 2019.

2.     Seeking to understand the status of the Seam Study and the progress towards its completion, on October 29, 2019 the Center submitted a request under the Freedom of Information Act, 5 U.S.C. § 552, *as amended* ("FOIA") seeking records on the Study, including records concerning the benefits of strengthening the connections between the three major U.S. grid sections. *See* Attachment 1.

3.      Although more than 20-working days have passed, to date Defendant has neither produced any responsive records nor provided a firm timetable for their production. Accordingly, the Center brings this suit pursuant to FOIA seeking declaratory and injunctive relief to require the search for, and production of, all responsive records.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this matter pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

5.      Venue is proper in this Court pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

6.      Injunctive relief is appropriate under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 2202.  Declaratory relief is appropriate under 28 U.S.C. § 2201.

## PARTIES

7.      Plaintiff Center for Biological Diversity ("the Center") is a national, non-profit conservation organization with offices throughout the United States.  The Center has more than one million members and online activists who care about protecting the natural environment from the ravages of climate change and other environmental degradation. Among the Center's priorities are initiatives that advance the critical energy transition from dirty fossil fuels to clean and renewable energy. The Center and its members are harmed by Defendant's violations of FOIA, which are preventing the Center from gaining a full understanding of Defendant's activities, priorities, and decision-making.

8.      Defendant U.S. Department of Energy is a cabinet-level federal agency with custody and/or control of the records subject to the Center's FOIA request, and is subject to FOIA pursuant to 5 U.S.C. § 552.

## STATUTORY BACKGROUND

9.     FOIA's basic purpose is for government transparency.  It establishes the public's right to access all federal agency records with certain narrow exceptions. 5 U.S.C. § 552(b)(1)-(9).

10.     FOIA imposes strict deadlines on federal agencies when they receive requests for records pursuant to FOIA. Specifically, within 20 working days of receiving a FOIA request, an agency must determine if it will release requested records and notify the requester of its determination and the reasons therefor, and the right to appeal an adverse agency determination. *Id.* § 552(a)(6)(A)(i).

11.     FOIA requires each agency to make reasonable efforts to search for records in a manner reasonably calculated to locate all records responsive to the FOIA request.  *Id.* § 552(a)(3)(C)-(D).  The cut-off date for the agency's search is the date that the agency conducts the search and not any earlier date.

12.     FOIA requires federal agencies to expeditiously disclose requested records, *see id.* § § 552(a)(3)(A), (a)(6)(C)(i), and places the burden on the agency to prove that it may withhold responsive records from a requester.  *Id.* § 552(a)(4)(B).

13.     FOIA provides that the U.S. district courts have jurisdiction "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B).

14.     FOIA provides this Court jurisdiction "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant."  *Id.* § 552(a)(4)(B).

## FACTUAL BACKGROUND

1.     **The Nation's Grid And The Interconnections Seam Study**

15.     The U.S. power system, or grid, has three major components: the Western Interconnection, the Eastern Interconnection, and the Electric Reliability Council of Texas ("ERCOT") (collectively, the "Interconnections"). The Eastern Interconnection connects Central Canada eastward to the Atlantic coast (excluding Québec), south to Florida and west to the foot of the Rocky Mountains (excluding most of Texas).  The Western Interconnection connects Western Canada south to Baja California in Mexico, and reaching eastward over the Rockies to the Great Plains.  Finally, ERCOT connects most of Texas.

16.     Within each Interconnection, all of the electric utilities are electrically tied together during normal system conditions.  But very little electricity is transferred between the Interconnections, and the three separate Interconnections operate almost independently of each other.

17.     The Interconnections Seam Study is intended to evaluate the benefits of strengthening the connections (or seams) between these three Interconnections, and the degree to which these efforts could facilitate a more reliable, resilient, sustainable, and affordable U.S. electricity system.

18.     Because energy generally must be used as soon as its generated (unless energy storage capacity is available), one of the challenges of increasing renewable energy development has been insuring that intermittent wind and solar generation can be immediately dispatched. While storage technologies continue to mature, one of the vital benefits of improving the connections across the U.S. grid will be expanding the availability of these intermittent resources to reach locations where the energy can be immediately used.

19.     The Department of Energy's National Renewable Energy Laboratory ("NREL") is the lead agency preparing the Seam Study, in coordination with other partners. Completion of the Study is important to allow policy-makers to make the significant investment decisions necessary to moving forward with improving these grid connections.

**2.     DOE's Apparent Effort to Suppress Release of The Final Seam Study**

20.     On information and belief, in 2019 NREL completed work on the Seam Study, which details the enormous potential of relying on improved grid connections to expand access to renewable power, and submitted it to DOE for final approval.  However, rather than finalize the Study and therefore allow progress on this important work, DOE sent the Study back to NREL for further work.

21.     Although NREL is continuing to work on the Seam Study, on information and belief agency officials do not anticipate that the Study's contents or conclusions are going to substantially change. Rather, as one of the Study's principal authors recently told the press, "[m]y expectation is that (the additional analysis) probably will not change the basic thrust of our conclusions: High capacity interregional transmission lines, particularly connecting the eastern and western grid compounds, have significant benefits." Peter Behr, *Details Emerge About DOE 'Super-grid' Renewable Study*, E&E News, Oct. 29, 2019. Instead, some analysts have suggested that the Study is being suppressed because allowing greater access to renewable energy could impact demand for dirty fossil fuel energy in areas where renewable energy sources would gain additional access.  *See id.*

22.     According to press accounts, at present the final Seam Study may not be publicly released until 2022.  *Id.*

### 3.     The Center's FOIA Request

23.     Seeking to obtain the information contained in the Seam Study, on October 29,

2019, the Center sent DOE and NREL a FOIA request, asking for the following:

all records generated in connection to the NREL "Interconnections Seam Study," ("Seam Study") or any related study that considers a continent-spanning transmission network, and the role of such a network expanding access to renewable energy resources, including but not limited to, records that:

1. Quantify the value of strengthening the connections (or seams) between the three major components of the U.S. power system;

2. Address approaches to encourage efficient development and utilization of U.S. energy resources through such connections;

3. Evaluate the degree to which interconnection can facilitate a more reliable, resilient, sustainable, and affordable U.S. electricity system;

4. Consider a suite of power system futures, including the following particular classes of power system models: long-term capacity expansion, year-long production cost, and AC power flow; and/or

5. Discuss the study's insight on the economic, environmental, reliability, and resiliency benefits of the study scenarios.

24.     DOE responded to the FOIA request the next day by asking whether the Center

would accept responsive emails and then request email attachments of interest. The Center

immediately agreed to that approach, on the condition that it not be required to submit additional

FOIA requests for attachments. DOE also granted the Center's request for a fee waiver in a

response from DOE headquarters stating that responsive records were located at DOE's Golden

Field Office (GFO) in Colorado, where NREL is located.

25.     To date, the Center has neither received responsive records nor any

communication indicating when records will be received.

## FIRST CLAIM FOR RELIEF

### (Failure to Promptly Disclose Records Responsive to the Center's FOIA Request)

26.     Plaintiff re-alleges and incorporates by reference the allegations made in all preceding paragraphs.

27.     DOE is violating FOIA by failing to promptly disclose records responsive to the Center's FOIA request.

28.     None of FOIA's statutory exemptions apply to the records that the Center seeks.

29.     The Center has a statutory right to the records it seeks.

30.     Based on the nature of the Center's organizational activities, it will undoubtedly continue to employ FOIA's provisions in record requests to EPA in the foreseeable future.

31.     The Center's organizational activities are adversely affected by DOE's failure to produce the requested records.

## SECOND CLAIM FOR RELIEF

### (Failure to Conduct Adequate Searches for Records Responsive to the Center's FOIA Request)

32.     Plaintiff re-alleges and incorporates by reference the allegations made in all preceding paragraphs.

33.     The Center has a statutory right to have DOE process its FOIA request in a manner that complies with FOIA. 5 U.S.C. § 552(a)(3).

34.     DOE is violating the Center's rights in this regard by unlawfully failing to complete a search reasonably calculated to locate all records responsive to the Center's FOIA request.

35.     Based on the nature of the Center's organizational activities, it will undoubtedly continue to employ FOIA's provisions in record requests to DOE in the foreseeable future.

36.     The Center's organizational activities will be adversely affected if DOE continues to violate FOIA's requirement to undertake a search reasonably calculated to locate records that are responsive to the Center's FOIA request.

### THIRD CLAIM FOR RELIEF

#### (Failure to Provide Reasonably Segregable Portions of Any Lawfully Exempt Records)

37.     Plaintiff re-alleges and incorporates by reference the allegations made in all preceding paragraphs.

38.     The Center has a statutory right to any reasonably segregable portion of a record that contains information that is subject to any of FOIA's exemptions.  5 U.S.C. § 552(b).

39.     DOE is violating the Center's rights in this regard by unlawfully withholding reasonably segregable portions of any lawfully exempt records that are responsive to the Center's FOIA request.

40.     Based on the nature of the Center's organizational activities, it will undoubtedly continue to employ FOIA's provisions in record requests to DOE in the foreseeable future.

41.     The Center's organizational activities will be adversely affected if DOE is allowed to continue violating FOIA's disclosure provisions.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court:

1.      Order Defendant to conduct searches reasonably calculated to locate all records responsive to the Center's FOIA request, utilizing a cut-off date for such searches that is the date the searches are conducted, and providing the Center, by a date certain, with all responsive records and reasonably segregable portions of lawfully exempt records sought in this action.

2.      Declare that Defendant's failures to timely undertake a search for and disclose to Plaintiff all records responsive to Plaintiff's FOIA Request, as alleged above, are unlawful under FOIA, U.S.C. § 552(a)(6)(A)(i).

3.      Award Plaintiff its costs and reasonable attorney fees pursuant to 5 U.S.C. § 552(a)(4)(E) or 28 U.S.C. § 2412.

4.      Grant such other and further relief as the Court may deem just and proper.

DATED: January 16, 2020

Respectfully submitted,

*/s/ Howard M. Crystal*
Howard M. Crystal
(D.C. Bar No. 446189)

*/s/ Anchun Jean Su*
Anchun Jean Su
(D.C. Bar No. CA285167)

CENTER FOR BIOLOGICAL DIVERSITY
1411 K Street N.W., Suite 1300
Washington, D.C. 20005
Telephone: 202-809-6926
Email: hcrystal@biologicaldiversity.org

*Attorneys for Plaintiff*

ATTACHMENT 1

 CENTER *for* BIOLOGICAL DIVERSITY                    *Because life is good.*

October 29, 2019

*VIA ELECTRONIC MAIL*

U.S. Department of Energy
1000 Independence Ave., SW
Washington, DC 20585
FOIA-Central@hq.doe.gov

Re:     Freedom of Information Act Request: National Renewable Energy Laboratory Seam
        Study

Dear FOIA Officer:

This is a request under the Freedom of Information Act, 5 U.S.C. § 552, *as amended* ("FOIA"),
from the Center for Biological Diversity ("Center"), a non-profit organization that works to
secure a future for all species hovering on the brink of extinction through science, law, and
creative media, and to fulfill the continuing educational goals of its membership and the general
public in the process. The Center's Climate Law Institute focuses on the impacts of climate
change on species and their habitats, and works on promoting renewable energy sources like
rooftop solar as well as working on the rapid phase-out of fossil fuels.

REQUESTED RECORDS

The Center requests from the U.S. Department of Energy ("DOE"):

From January 1, 2017 to the date DOE conduct this search, all records generated in
connection to the NREL "Interconnections Seam Study," ("Seam Study") or any related
study that considers a continent-spanning transmission network, and the role of such a
network expanding access to renewable energy resources, including but is not limited to,
records that:

1.  Quantify the value of strengthening the connections (or seams) between the three
    major components of the U.S. power system;

2.  Address approaches to encourage efficient development and utilization of U.S. energy
    resources through such connections;

3.  Evaluate the degree to which interconnection can facilitate a more reliable, resilient,
    sustainable, and affordable U.S. electricity system;

*Arizona · California · Colorado · Florida · N. Carolina · New York · Oregon · Virginia · Washington, D.C. · La Paz, Mexico*

BiologicalDiversity.org

4. Consider a suite of power system futures, including the following particular classes of power system models: long-term capacity expansion, year-long production cost, and AC power flow; and/or

5. Discuss the study's insight on the economic, environmental, reliability, and resiliency benefits of the study scenarios.

For this request, the term "records" refers to, but is not limited to, documents, correspondence (including, but not limited to, inter and/or intra-agency correspondence as well as correspondence with entities or individuals outside the federal government), emails, letters, notes, recordings, telephone records, voicemails, telephone notes, telephone logs, text messages, chat messages, minutes, memoranda, comments, files, presentations, consultations, biological opinions, assessments, evaluations, schedules, papers published and/or unpublished, reports, studies, photographs and other images, data (including raw data, GPS or GIS data, UTM, LiDAR, etc.), maps, and/or all other responsive records, in draft or final form.

This request is not meant to exclude any other records that, although not specially requested, are reasonably related to the subject matter of this request. If you or your office have destroyed or determine to withhold any records that could be reasonably construed to be responsive to this request, I ask that you indicate this fact and the reasons therefore in your response.

Under the FOIA Improvement Act of 2016, agencies are prohibited from denying requests for information under FOIA unless the agency reasonably believes release of the information will harm an interest that is protected by the exemption. FOIA Improvement Act of 2016 (Public Law No. 114-185), codified at 5 U.S.C. § 552(a)(8)(A).

Should you decide to invoke a FOIA exemption, please include sufficient information for us to assess the basis for the exemption, including any interest(s) that would be harmed by release. Please include a detailed ledger which includes:

1. Basic factual material about each withheld record, including the originator, date, length, general subject matter, and location of each item; and

2. Complete explanations and justifications for the withholding, including the specific exemption(s) under which the record (or portion thereof) was withheld and a full explanation of how each exemption applies to the withheld material. Such statements will be helpful in deciding whether to appeal an adverse determination. Your written justification may help to avoid litigation.

If you determine that portions of the records requested are exempt from disclosure, we request that you segregate the exempt portions and mail the non-exempt portions of such records to my attention at the address below within the statutory time limit. 5 U.S.C. § 552(b).

The Center is willing to receive records on a rolling basis.

FOIA's "frequently requested record" provision was enacted as part of the 1996 Electronic Freedom of Information Act Amendments, and requires all federal agencies to give "reading room" treatment to any FOIA-processed records that, "because of the nature of their subject matter, the agency determines have become the subject of subsequent requests for substantially the same records." *See* 5 U.S.C. § 552(a)(2)(D)(ii)(I). Also, enacted as part of the 2016 FOIA Improvement Act, FOIA's Rule of 3 requires all federal agencies to proactively "make available for public inspection in an electronic format" "copies of records, regardless of form or format … that have been released to any person … and … that have been requested 3 or more times." 5 U.S.C. § 552(a)(2)(D)(ii)(II). Therefore, we respectfully request that you make available online any records that the agency determines will become the subject of subsequent requests for substantially the same records, and records that have been requested three or more times.

Finally, agencies must preserve all the records requested herein while this FOIA is pending or under appeal. The agency shall not destroy any records while they are the subject of a pending request, appeal, or lawsuit under the FOIA. 40 C.F.R. § 2.106; *see Chambers v. U.S. Dep't of Interior*, 568 F.3d 998, 1004 (D.C. Cir. 2009) ("an agency is not shielded from liability if it intentionally transfers or destroys a document after it has been requested under FOIA or the Privacy Act"). If any of the requested records are destroyed, the agency and responsible officials are subject to attorney fee awards and sanctions, including fines and disciplinary action. A court held an agency in contempt for "contumacious conduct" and ordered the agency to pay plaintiff's costs and fees for destroying "potentially responsive material contained on hard drives and email backup tapes." *Landmark Legal Found. v. EPA*, 272 F. Supp.2d 59, 62 (D.D.C. 2003); *see also Judicial Watch, Inc. v. Dep't of Commerce*, 384 F. Supp. 2d 163, 169 (D.D.C. 2005) (awarding attorneys' fees and costs because, among other factors, agency's "initial search was unlawful and egregiously mishandled and …likely responsive documents were destroyed and removed"), aff'd in relevant part, 470 F.3d 363, 375 (D.C. Cir. 2006) (remanding in part to recalculate attorney fees assessed). In another case, in addition to imposing a $10,000 fine and awarding attorneys' fees and costs, the court found that an Assistant United States Attorney prematurely "destroyed records responsive to [the] FOIA request while [the FOIA] litigation was pending" and referred him to the Department of Justice's Office of Professional Responsibility. *Jefferson v. Reno*, 123 F. Supp. 2d 1, 6 (D.D.C. 2000).

<u>FORMAT OF REQUESTED RECORDS</u>

Under FOIA, you are obligated to provide records in a readily accessible electronic format and in the format requested. *See, e.g.*, 5 U.S.C. § 552(a)(3)(B) ("In making any record available to a person under this paragraph, an agency shall provide the record in any form or format requested by the person if the record is readily reproducible by the agency in that form or format."). "Readily accessible" means text-searchable and OCR-formatted. *See* 5 U.S.C. § 552(a)(3)(B). Pursuant to this requirement, we hereby request that you produce all records in an electronic format and in their native file formats. Additionally, please provide the records in a load-ready format with a CSV file index or Excel spreadsheet. If you produce files in .PDF format, then please omit any "portfolios" or "embedded files." Portfolios and embedded files within files are not readily accessible. Please do not provide the records in a single, or "batched," .PDF file. We appreciate the inclusion of an index.

If you should seek to withhold or redact any responsive records, we request that you: (1) identify each such record with specificity (including date, author, recipient, and parties copied); (2) explain in full the basis for withholding responsive material; and (3) provide all segregable portions of the records for which you claim a specific exemption. 5 U.S.C. § 552(b). Please correlate any redactions with specific exemptions under FOIA.

<u>RECORD DELIVERY</u>

We appreciate your help in expeditiously obtaining a determination on the requested records. As mandated in FOIA, we anticipate a reply within 20 working days. 5 U.S.C. § 552(a)(6)(A)(i); 5 C.F.R. § 1303.10(c). Failure to comply within the statutory timeframe may result in the Center taking additional steps to ensure timely receipt of the requested materials. Please provide a complete reply as expeditiously as possible. You may email or mail copies of the requested records to:

Ann Brown
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211
foia@biologicaldiversity.org

If you find that this request is unclear, or if the responsive records are voluminous, please email me to discuss the scope of this request.

<u>REQUEST FOR FEE WAIVER</u>

FOIA was designed to provide citizens a broad right to access government records. FOIA's basic purpose is to "open agency action to the light of public scrutiny," with a focus on the public's "right to be informed about what their government is up to." *NARA v. Favish*, 541 U.S. 157, 171 (2004) quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 773-74 (1989) (internal quotation and citations omitted). In order to provide public access to this information, FOIA's fee waiver provision requires that "[d]ocuments shall be furnished without any charge or at a [reduced] charge," if the request satisfies the standard. 5 U.S.C. § 552(a)(4)(A)(iii). FOIA's fee waiver requirement is "liberally construed." *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1310 (D.C. Cir. 2003); *Forest Guardians v. U.S. Dept. of Interior*, 416 F.3d 1173, 1178 (10th Cir. 2005).

The 1986 fee waiver amendments were designed specifically to provide non-profit organizations such as the Center access to government records without the payment of fees. Indeed, FOIA's fee waiver provision was intended "to prevent government agencies from using high fees to discourage certain types of requesters and requests," which are "consistently associated with requests from journalists, scholars, and *non-profit public interest groups*." *Ettlinger v. FBI*, 596 F. Supp. 867, 872 (D. Mass. 1984) (emphasis added). As one Senator stated, "[a]gencies should not be allowed to use fees as an offensive weapon against requesters seeking access to Government information ... ." 132 Cong. Rec. S. 14298 (statement of Senator Leahy).

I.      The Center Qualifies for a Fee Waiver.

Under FOIA, a party is entitled to a fee waiver when "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the [Federal] government and is not primarily in the commercial interest of the requester."  5 U.S.C. § 552(a)(4)(A)(iii).  DOE's FOIA regulations at 10 C.F.R. § 1004.9(a) establish the same standard.

Thus, DOE must consider five factors to determine whether a request is in the public interest: (1) whether the subject of the requested records concerns "the operations or activities of the Federal government," (2) whether the disclosure is "likely to contribute" to an understanding of government operations or activities, (3) whether the disclosure "will contribute to public understanding" of a reasonably broad audience of persons interested in the subject, (4) whether the disclosure is likely to contribute "significantly" to public understanding of government operations or activities, and (5) whether the "requester does not have a commercial interest that would be furthered by the requested disclosure."  *Id*. § 7.43(c)(1) – (5).  As shown below, the Center meets each of these factors.

A.      The Subject of This Request Concerns "The Operations and Activities of the Government."

The subject matter of this request concerns the operations and activities of DOE.  This request asks for from January 1, 2017 to the date DOE conducts this search, all records generated in connection to NREL's "Interconnections Seam Study," or related study that considers a continent-spanning transmission network, and the role of such a network expanding access to renewable energy resources, including but not limited to, records that: (1) quantify the value of strengthening the connections (or seams) between the three major components of the U.S. power system; (2) address approaches to encourage efficient development and utilization of U.S. energy resources through such connections; (3) evaluate the degree to which interconnection can facilitate a more reliable, resilient, sustainable, and affordable U.S. electricity system; (4) consider a suite of power system futures, including the following particular classes of power system models: long-term capacity expansion, year-long production cost, and AC power flow; and/or (5) discuss the study's insight on the economic, environmental, reliability, and resiliency benefits of the study scenarios.

This FOIA will provide the Center and the public with crucial insight into the Seam Study, which is vital to allow renewable energy to efficiently power the grid.  It is clear that a study conducted by a federal agency is a specific and identifiable activity of the government, and in this case it is the executive branch agency of DOE.  *Judicial Watch*, 326 F.3d at 1313 ("[R]easonable specificity is all that FOIA requires with regard to this factor") (internal quotations omitted).  Thus, the Center meets this factor.

B.  Disclosure is "Likely to Contribute" to an Understanding of Government Operations or Activities.

The requested records are meaningfully informative about government operations or activities and will contribute to an increased understanding of those operations and activities by the public.

Disclosure of the requested records will allow the Center to convey to the public information about renewable energy resources.  The rapid build out of renewable energy resources are critical for the clean energy transition, and to mitigate the worst impacts of climate change.  The Seam Study is essential to allow renewable energy to efficiently power the grid, and the public has a right to understand what options are being considered and how the government is approaching this vital task.  Once the information is made available, the Center will analyze it and present it to its 1.6 million members and online activists and the general public in a manner that will meaningfully enhance the public's understanding of this topic.

Thus, the requested records are likely to contribute to an understanding of DOE's operations and activities.

C.  Disclosure of the Requested Records Will Contribute to a Reasonably Broad Audience of Interested Persons' Understanding of the Seam Study and Its Effect on Renewable Energy Sources.

The requested records will contribute to public understanding of whether DOE's actions are consistent with its mission to "to ensure America's security and prosperity by addressing its energy, environmental and nuclear challenges through transformative science and technology solutions."[1]  As explained above, the records will contribute to public understanding of this topic.

Activities of DOE generally, and specifically studies that may benefit renewable energy sources, are areas of interest to a reasonably broad segment of the public.  The Center will use the information it obtains from the disclosed records to educate the public at large about this topic. *See W. Watersheds Proj. v. Brown*, 318 F. Supp.2d 1036, 1040 (D. Idaho 2004) (finding that "WWP adequately specified the public interest to be served, that is, educating the public about the ecological conditions of the land managed by the BLM and also how … management strategies employed by the BLM may adversely affect the environment").

Through the Center's synthesis and dissemination (by means discussed in Section II, below), disclosure of information contained in and gleaned from the requested records will contribute to a broad audience of persons who are interested in the subject matter.  *Ettlinger*, 596 F. Supp. at 876 (benefit to a population group of some size distinct from the requester alone is sufficient); *Carney v. Dep't of Justice*, 19 F.3d 807, 815 (2d Cir. 1994), *cert. denied*, 513 U.S. 823 (1994) (applying "public" to require a sufficient "breadth of benefit" beyond the requester's own interests); *Cmty. Legal Servs. v. Dept. of Hous. & Urban Dev.*, 405 F. Supp.2d 553, 557 (E.D. Pa. 2005) (in granting fee waiver to community legal group, court noted that while the

---

[1] DOE, *Mission*, https://www.energy.gov/mission (last visited Oct. 28, 2019).

requester's "work by its nature is unlikely to reach a very general audience," "there is a segment of the public that is interested in its work").

Indeed, the public does not currently have an ability to easily evaluate the requested records, which are not currently in the public domain. *See Cmty. Legal Servs.*, 405 F. Supp.2d at 560 (because requested records "clarify important facts" about agency policy, "the CLS request would likely shed light on information that is new to the interested public."). As the Ninth Circuit observed in *McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d 1282, 1286 (9th Cir. 1987), "[FOIA] legislative history suggests that information [has more potential to contribute to public understanding] to the degree that the information is new and supports public oversight of agency operations… ."[2]

Disclosure of these records is not only "likely to contribute," but is certain to contribute, to public understanding of the Seam Study in order to allow renewable energy to efficiently power the grid. The public is always well served when it knows how the government conducts its activities, particularly matters touching on legal questions. Hence, there can be no dispute that disclosure of the requested records to the public will educate the public about this issue.

   D.   Disclosure is Likely to Contribute Significantly to Public Understanding of
        Government Operations or Activities.

The Center is not requesting these records merely for their intrinsic informational value. Disclosure of the requested records will significantly enhance the public's understanding of the Seam Study and its potential for advancing the renewable energy transition, as compared to the level of public understanding that exists prior to the disclosure. Indeed, public understanding will be *significantly* increased as a result of disclosure because the requested records will help reveal more about the government's role in promoting renewable energy resources.

The records are also certain to shed light on DOE's compliance with its own mission.[3] Such public oversight of agency action is vital to our democratic system and clearly envisioned by the drafters of the FOIA. Thus, the Center meets this factor as well.

   E.   Obtaining the Requested Records is of No Commercial Interest to the Center.

Access to government records, disclosure forms, and similar materials through FOIA requests is essential to the Center's role of educating the general public. Founded in 1994, the Center is a 501(c)(3) nonprofit conservation organization (EIN: 27-3943866) with more than 1.6 million members and online activists dedicated to the protection of endangered and threatened species and wild places. The Center has no commercial interest and will realize no commercial benefit from the release of the requested records.

---

[2] In this connection, it is immaterial whether any portion of the Center's request may currently be in the public domain because the Center requests considerably more than any piece of information that may currently be available to other individuals. *See Judicial Watch*, 326 F.3d at 1315.

[3] *See supra* note 3.

II.     The Center has a Demonstrated Ability to Disseminate the Requested Information
        Broadly.

The Center is a non-profit organization that informs, educates, and counsels the public regarding
environmental issues, policies, and laws relating to environmental issues.  The Center has been
substantially involved in the activities of numerous government agencies for over 25 years, and
has consistently displayed its ability to disseminate information granted to it through FOIA.

In consistently granting the Center's fee waivers, agencies have recognized: (1) that the
information requested by the Center contributes significantly to the public's understanding of the
government's operations or activities; (2) that the information enhances the public's
understanding to a greater degree than currently exists; (3) that the Center possesses the expertise
to explain the requested information to the public; (4) that the Center possesses the ability to
disseminate the requested information to the general public; (5) and that the news media
recognizes the Center as an established expert in the field of imperiled species, biodiversity, and
impacts on protected species.  The Center's track record of active participation in oversight of
governmental activities and decision making, and its consistent contribution to the public's
understanding of those activities as compared to the level of public understanding prior to
disclosure are well established.

The Center intends to use the records requested here similarly.  The Center's work appears in
nearly 5,000 news stories online and in print, radio and TV per month, including regular
reporting in such important outlets as *The New York Times*, *Washington Post*, *The Guardian*, and
*Los Angeles Times*.  Many media outlets have reported on renewable energy development,
utilizing information obtained by the Center from federal agencies, including DOE.  In 2018,
more than 2.5 million people visited the Center's extensive website, and viewed pages a total of
4.3 million times.  The Center sends out more than 277 email newsletters and action alerts per
year to more than over 1.6 million members and supporters.  Three times a year, the Center sends
printed newsletters to more than 67,300 members.  More than 522,000 people have "liked" the
Center on Facebook, and there are regular postings regarding environmental protection and
renewable energy.  The Center also regularly tweets to more than 79,300 followers on Twitter.
The Center intends to use any or all of these far-reaching media outlets to share with the public
information obtained as a result of this request.

Public oversight and enhanced understanding of DOE's duties is absolutely necessary.  In
determining whether disclosure of requested information will contribute significantly to public
understanding, a guiding test is whether the requester will disseminate the information to a
reasonably broad audience of persons interested in the subject.  *Carney*, 19 F.3d 807.  The Center
need not show how it intends to distribute the information, because "[n]othing in FOIA, the
[agency] regulation, or our case law require[s] such pointless specificity."  *Judicial Watch*, 326
F.3d at 1314.  It is sufficient for the Center to show how it distributes information to the public
generally.  *Id.*

III.    Conclusion

For all of the foregoing reasons, the Center qualifies for a full fee waiver.  We hope that DOE will immediately grant this fee waiver request and begin to search and disclose the requested records without any unnecessary delays.

If you have any questions, please contact me at foia@biologicaldiversity.org.  All records and any related correspondence should be sent to my attention at the address below.

Sincerely,

Ann K. Brown
Open Government Coordinator
CENTER FOR BIOLOGICAL DIVERSITY
P.O. Box 11374
Portland, OR 97211-0374
foia@biologicaldiversity.org